## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOHN ENSEY,

     Plaintiff,

v.                                                                                    No. 08-CV-00801 JAP/CG

OZZIE'S PIPELINE PADDER, INC.,

     Defendant.

## MEMORANDUM OPINION AND ORDER

On November 24, 2009, Plaintiff John Ensey ("Ensey") filed Plaintiff's Motion for New Trial and Memorandum in Support ("Motion")(Doc. No. 139).  Then, on December 8, 2009, Defendant Ozzie's Pipeline Padder, Inc. ("Ozzie's") filed Response to Plaintiff's Motion for New Trial and Memorandum in Support ("Response")(Doc. No. 141).  Next, on December 22, 2009, Ensey filed Plaintiff's Reply in Support of Motion for New Trial ("Reply")(Doc. No. 144).

After reviewing the parties' initial briefing, the Court was unclear regarding the specific bases for Ensey's request for a new trial.  Consequently, on January 7, 2010, the Court wrote counsel a letter inquiring whether, in addition to seeking a new trial on the basis of allegedly erroneous jury instructions, Ensey intended to move for a new trial on the basis of insufficiency of the evidence.[1]  The Court informed Ensey's counsel that if

---

[1] In this letter, the Court explained the reason for its confusion and noted the ambiguities in Ensey's arguments.  Specifically, the Court informed counsel that the only indication it found that Ensey sought a new trial based on insufficiency of the evidence was the vague statement in his Motion that "[f]or the reasons discussed below, Ozzie's could not sustain its burden of proof proving it was a 'special employer,' 'general employer,' or 'dual employer' at the time of the accident. Therefore it was erroneous for the jury to even consider the issue, much less determine employment status."  (Mot. at 2.)  The Court noted that Ensey did not offer any citations to the record or legal authority to support that argument and further observed that Ensey ignored the portions of Ozzie's Response discussing the evidence of dual employment.

Ensey sought to challenge the sufficiency of the evidence, then Ensey's counsel would be required to order a copy of the trial transcript from the court reporter to enable the parties to discuss the sufficiency of the evidence, with specific reference to the relevant parts of the transcript, and to enable the Court to review the evidence presented.  On January 13, 2010, Ensey's counsel, Mr. Houliston, responded to the Court's January 7, 2010 letter and advised the Court that Ensey did intend to challenge the sufficiency of the evidence supporting the jury's verdict.  In light of Mr. Houliston's response, on January 14, 2010, the Court sent counsel another letter requesting supplemental briefing on the issue of Ensey's challenge to the sufficiency of the evidence and detailing the Court's desired procedure for that briefing.  Importantly, the Court explicitly instructed counsel that the parties' discussion of the evidence must include citations to specific parts of the trial transcript or trial exhibits.

On March 10, 2010, Ensey filed Plaintiff's Supplemental Motion for New Trial and Memorandum in Support ("Supplemental Motion")(Doc. No. 152).  On March 24, 2010, Ozzie's filed Defendant's Response to Plaintiff's Supplemental Motion for New Trial and Memorandum in Support ("Supplemental Response")(Doc. No. 154).  Despite the Court's clear instructions in its January 14, 2010 letter, Ensey's Supplemental Motion contained no citations to the trial transcript and made only a vague reference to one trial exhibit.  As a result, the Court remained unclear regarding the basis of Ensey's challenge to the sufficiency of the evidence.  Therefore, on April 1, 2010, the Court sent counsel another letter requesting that Ensey clarify in his Supplemental Reply the basis of his sufficiency of the evidence challenge. Also, the Court, once again, instructed Ensey's counsel to include specific page and line citations to the trial transcript and

specific citations to the relevant portions of the trial exhibits supporting Ensey's

arguments.[2]  On April 7, 2010, Ensey filed Plaintiff's Reply in Support of Plaintiff's

Supplemental Motion for New Trial ("Supplemental Reply")(Doc. No. 155), which

consisted of a single page informing the Court that "Plaintiff cannot add anything more

at this point which follows the Court's direction."  (*Id.*)  Needless to say, Ensey's

Supplemental Reply did not provide the Court with the clarification it had sought.

　　Thus, having reviewed the briefing, the relevant portions of the trial record, and

the applicable law, the Court finds that Ensey's Motion and Supplemental Motion for a

new trial should be denied.[3]

---

[2] As in its January 7, 2010 letter, the Court identified the reasons for its confusion.  Specifically, the Court noted that its understanding at the time of sending its January 14, 2010 letter was that Ensey intended to challenge the sufficiency of the evidence supporting the jury's verdict that Ozzie's was one of Ensey's employers at the time of his accident.  The Court observed, however, that Ensey's Supplemental Motion devoted the vast majority of its discussion to arguing that there was insufficient evidence to support a finding that Defendant complied with the insurance provisions of the New Mexico Workers' Compensation Act, an issue not clearly raised in earlier briefing.  Once again though, in his Supplemental Motion Plaintiff made only passing reference to a purported lack of evidence supporting the jury's finding that Ozzie's was one of Ensey's employers at the time of his accident.  Therefore, the Court, once more, sought clarification on the precise nature of Ensey's challenge to the sufficiency of the evidence.


[3] The Court pauses to note that, with the exception of Ozzie's Supplemental Response, the parties' post-trial briefing was utterly deficient and has been largely unhelpful to the Court.  Indeed, neither party articulated the legal standards governing the procedural aspects of Ensey's Motion. Consequently, both parties failed to present their arguments in light of any standard of review or legal standard governing the relevant provisions of the Federal Rules of Civil Procedure.  Ensey's failure in this regard is particularly troubling because it creates considerable confusion regarding the bases on which he claims he is entitled to a new trial and the precise nature of the relief he is requesting given the imprecise manner in which he has articulated his arguments. That imprecision, in turn, ostensibly caused Ozzie's to guess at Ensey's arguments and to devote a substantial portion of its briefing to issues not explicitly raised, but conceivably present, in Ensey's Motion.  Needless to say, the parties' muddled arguments significantly complicated the Court's analysis of the issues and unnecessarily consumed the Court's time and resources. While it is certainly the Court's job to research carefully the legal issues properly presented by the parties, it is not the Court's function to do counsel's work for them.

# BACKGROUND

## I.     Factual Background

This case arises from Plaintiff John Ensey's accident on an oil pipeline padding machine designed and manufactured by Defendant Ozzie's Pipeline Padder, Inc.  The complete factual background is discussed in the Court's Memorandum Opinion and Order (Doc. No. 69), and the Court, therefore, will set forth only those portions of the factual background necessary to the resolution of Ensey's motion.

In August 2005, Ozzie's hired Ensey to be a pipeline padding machine operator. Ensey immediately began Ozzie's training program, which largely consisted of on-the-job training and observing the operation of the machine.  After training at a job in Wyoming, Ensey traveled to New Mexico to undergo additional training and to work on a job for Rockford Corporation ("Rockford").  Rockford was a general contractor that leased a pipeline padding machine from Ozzie's.  Under the terms of the lease between Ozzie's and Rockford, Rockford was required, *inter alia*, to assume responsibility for paying the wages and benefits of Ozzie's padding machine operator.  Among the benefits for which Rockford was responsible was workers' compensation insurance for the machine operator.  Specifically, Ozzie's required that Rockford obtain workers' compensation coverage and provide Ozzie's with a certificate of insurance evidencing that coverage.  The parties do not dispute that Rockford complied with this obligation required by the lease. After Ensey completed his training, Ensey became the operator of Ozzie's pipeline padding machine that was leased to Rockford.  Rockford, as required, assumed responsibility for Ensey's wages, benefits and workers' compensation insurance.

4

On October 19, 2005 while Ensey operating Ozzie's pipeline padding machine on a job for Rockford, he stepped onto a moving conveyor on the pipeline padding machine and was seriously injured while being pulled through the machine.  The accident occurred as Ensey was inspecting the machine before beginning pipeline padding operations.  While Ensey acknowledges that he saw the belt moving before he stepped on it, he claims that Ozzie's never trained or warned him not to step on the belt.  As a result of his accident, Ensey required extensive medical care.  The parties agree that Ensey's workers' compensation insurance reimbursed the entire cost of that care in the amount of $195,390.33.  (Def.'s Trial Ex. X-2.)

## II.    Procedural Background

Following his accident, Ensey filed suit against Ozzie's alleging strict product liability, negligent training, and breach of warranty.  Ozzie's denied liability on each of Ensey's claims, and additionally asserted that it should be relieved of liability under the exclusivity provision of the Workers' Compensation Act ("Act"), NMSA 1978 § 52-1-9. Ozzie's subsequently filed a motion for summary judgment on each of Ensey's claims and extensively argued its entitlement to the protection of the exclusivity provision of the Act in that motion.  (*See* Doc. No. 49.)   On October 6, 2009, in a Memorandum Opinion and Order (Doc. No. 69), the Court granted summary judgment  in favor of Ozzie's on all but Ensey's negligent training claim, finding that a genuine, material factual dispute existed regarding whether Ozzie's was negligent in training and warning machine operators about the dangers of the pipeline padding machine.  (*Id.* at 21.) Furthermore, the Court found that a genuine, material factual dispute existed with respect to Ensey's employment status at the time of his accident, which precluded

5

summary judgment on Ozzie's claimed entitlement to the exclusivity provision of the Act. (*Id.*)  Accordingly, those two issues remained in the case for final resolution by the jury at trial.

After a jury trial held on November 2 to November 6, 2009, the jury returned a verdict that, at the time of the accident, Ensey was an employee of both Rockford Corporation and Ozzie's, which entitled Ozzie's to invoke the exclusivity provision of the Act under NMSA 1978 § 52-1-9. (Doc. No. 136.)  In accordance with the jury's verdict, the Court entered a Judgment (Doc. No. 134) in favor of Ozzie's and dismissed all of Ensey's claims with prejudice.

**DISCUSSION**

Despite its title, Ensey's Motion appears to request two types of relief: 1) a new trial, and 2) judgment as a matter of law on the issue of Ozzie's entitlement to the protection of the exclusivity provision of the Act.  The Court will address each request for relief independently.

**I.     Motion for a New Trial**

Ensey moves for a new trial under Fed. R. Civ. P. 59 (a)(1)(A) on two primary grounds.  First, Ensey contends that the Court erroneously instructed the jury regarding the issue of Ensey's employment status at the time of his accident and improperly included the issue on the special verdict form.  Second, Ensey asserts that there was insufficient evidence to support the jury's verdict, and thus that he is entitled to a new trial on that basis regardless of whether the Court's instructions to the jury and special verdict form were proper.  The Court will begin by briefly articulating the legal standard governing motions under Fed. R. Civ. P. 59 (a)(1)(A) since neither party has done so.

The discussion will then turn to Ensey's challenge to the jury instructions and special verdict form.  Then, the Court will address Ensey's argument that the jury's verdict was not supported by sufficient evidence.

### A.    Legal Standard Governing Motions Under Rule 59 (a)(1)(A)

After a jury trial, under Fed. R. Civ. P. 59 (a)(1)(A), the Court may grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" A motion for a new trial is committed to the sound discretion of the trial court.  *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).  However, the Tenth Circuit has clearly explained that a motion for a new trial "is not regarded with favor and should only be granted with great caution." *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991).  Accordingly, to warrant the Court granting a new trial, the moving party must show "trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983).

### B.    Ensey's Motion for a New Trial Based on Allegedly Erroneous Jury Instructions

The Court will begin by addressing the aspect of Ensey's Motion alleging error in the Court's instructions to the jury.[4]  "When reviewing a motion for new trial [] based on alleged errors in the jury instructions, the district court must consider the instructions as a whole." *AG Equip. Co. v. AIG Life Ins. Co.*, 636 F. Supp. 2d 1210, 1228 (N.D. Okla.

---

[4]  While Ensey did not specifically identify the jury instruction to which he attributes error, the focus of his arguments appears to be on the Court's instructions to the jury regarding the dual employment theory, which are Jury Instructions 11 and 12. (*See* Court's Instructions to the Jury, Doc. No. 132.)

2009)(citing *Patty Precision Prods. Co. v. Brown & Sharpe Mfg. Co.*, 846 F.2d 1247, 1252 (10th Cir. 1988)).  In doing so, the relevant inquiry is not whether the instructions were "faultless in every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duties to determine these issues." *Haberman v. Hartford Ins. Group*, 443 F.3d 1257, 1274 (10th Cir. 2006)(internal citation and quotation marks omitted).   Determining the applicable standard of review for this inquiry necessarily requires the Court to examine whether the moving party properly raised an objection to the instructions at the time of trial.  *See* Fed. R. Civ. P. 51 (d)(2).  Fed. R. Civ. P. 51 (c)(1) provides that "[a] party who objects to an instruction . . . must do so on the record, stating distinctly the matter objected to and the grounds for the objection."  As the Tenth Circuit has explained, "the purpose of the objection is to give the court an opportunity to correct any mistake before the jury enters deliberations."  *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir. 1999). Under Fed. R. Civ. P. 51 (c)(2)(A), an objection is timely if made on the record and outside the jury's presence before the Court instructs the jury.  When a party fails to object to an instruction in accordance with Fed. R. Civ. P. 51 (c), the Court reviews the instructions only for plain error.  Fed. R. Civ. P. 51 (d)(2).  To constitute plain error, the instructions must have been "patently, plainly erroneous and prejudicial."  *Johnson ex rel. Estate of Cano v. Holmes*, 455 F.3d 1133, 1141 (10th Cir. 2006)(internal citation and quotation marks omitted).

### 1.    Whether Ensey Properly Objected to the Jury Instructions at Trial

Before reaching the merits of Ensey's challenge to the Court's jury instructions, the Court must first determine whether Ensey properly raised an objection to those instructions at trial.  Ensey asserts that he properly raised and preserved his objection to the instructions by tendering proposed jury instructions and a proposed special verdict form that omitted any reference to the dual employment issue.  That assertion, however, is directly contrary to the express language of Rule 51 (c) and the well-settled law of the Tenth Circuit.  Indeed, the Tenth Circuit has explicitly held that "[m]erely tendering proposed instructions to a court is insufficient to comply with the strictures of Fed. R. Civ. P. 51 which require that a party objecting to the giving o[f] . . . a particular instruction must state distinctly the matter objected to and the grounds of the objection."  *Beaudry v. Corrections Corp. of America*, 331 F.3d 1164, 1168 n. 6 (10th Cir. 2003)(internal citation and quotation marks omitted); *see also Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158, 1172 (10th Cir. 2003)(holding that "[a] party does not satisfy the requirements for Rule 51 by merely submitting to the court a proposed instruction that differs from the instruction ultimately given to the jury."); *Shugart v. Cent. Rural Elec. Co-Op*, 110 F.3d 1501, 1507 (10th Cir. 1997)(applying the same standard to a party's failure to object to a proposed verdict form).  At trial, when the Court inquired on the record whether Ensey objected to any of the Court's proposed instructions, Ensey's counsel, Mr. Houliston, stated, "[w]e have no objections to the proposed instructions."  (Trial Tr. 466:14-15.) Therefore, because Ensey failed to object in the manner prescribed by Rule 51 (c), the Court will review the jury instructions given only for plain error.

### 2.      Whether the Instructions Given Constituted Plain Error

Ensey alleges two defects in the Court's instructions to the jury: 1) the purported lack of notice of the dual employment issue, and 2) that Ozzie's, as a matter of law, was not entitled to an instruction on dual employment because, according to Ensey, Ozzie's did not satisfy its insurance obligations under the Act.  The Court will address each alleged defect independently.

### a.      Notice of the Dual Employment Issue

Ensey contends that Ozzie's did not raise the issue of dual employment until trial. Specifically, Ensey argues that the issue of whether he was an employee of both Ozzie's and Rockford at the time of his accident should never have been submitted to the jury because, "[i]t was only at trial that the term 'dual employer' was raised and as a result of Ozzie's argument, a specific jury instruction was given to the jury along with a concomitant question on the Special Verdict. Ozzie's made a last ditch effort, effectively confusing the issues by making their last minute 'dual employer' argument." (Mot. at 2.) Ensey argues that "Ozzie's could not sustain its burden of proof proving it was a 'special employer,' 'general employer,' or 'dual employer' at the time of the accident. Therefore it was erroneous for the jury to even consider the issue, much less determine employment status."[5]  (*Id.*)

Ozzie's, in its Response, disputes Ensey's contention that Ozzie's did not raise the issue of dual employment until trial. Ozzie's asserts that the issue of dual employment has long been a part of the case, and that Ozzie's raised it well in advance of trial.

---

[5] This argument also ostensibly pertains to Ensey's challenge to the sufficiency of the evidence supporting the jury's verdict, which the Court will consider in Part I.C *infra*.

According to Ozzie's, the term "'dual employer' is simply another way of articulating that a party may be subject to the exclusive remedy protections of the [] Act where certain special employment relationships exist.  Whether termed 'special employer,' 'leased employee,' or 'statutory employer,' all of the theories involve dual employment relationships under the exclusive remedy provisions of the Act."  (Resp. at 1-2.)  Therefore, Ozzie's contends that the Court's instruction to the jury regarding dual employment was proper.

While it is unclear whether Ensey raises this lack of notice argument as an assertion of error by the Court or merely as a critique of Ozzie's counsel's trial tactics, in either case, his argument is without merit.  Indeed, as early as September 17, 2009, nearly two months before trial, Ensey's counsel, Mr. Houliston, used the term "dual employment" in a discussion with the Court.  Specifically, at the pretrial conference, in response to the Court's question regarding how Mr. Houliston distinguished this case from *Vigil v. Digital Equip. Corp.*, 1996-NMCA-100, 122 N.M. 417, 925 P.2d 883, Mr. Houliston responded in part, "[t]his is not a case in which the person who is trying to claim the *dual employment relationship* can show that they themselves complied with the New Mexico Workers' Compensation Act."  (Pretrial Conf. Tr. 19:25 - 20:3, Doc. No. 58) (emphasis added).  Mr. Houliston's use of the term "dual employment relationship" demonstrates his awareness of the dual employer issue well in advance of trial.  Furthermore, his use of the term buttresses Ozzie's argument that the term "dual employment" is merely another way of articulating the various special employment relationships recognized under New Mexico law and indicates that Mr. Houliston conceptualized the term as such.  Therefore, based on this statement during the pretrial conference, the Court could conclude that Ensey was aware of the dual employment issue before trial.

However, there are two other clear indications that Ensey was aware of the dual employment issue before trial.  The first is Ozzie's statement of defenses in the Pretrial Order, which included the dual employment issue.  The second is Mr. Houliston's discussion of the issue during his opening statement.  With respect to the Pretrial Order, Ozzie's said in its statement of defenses that "[Ensey's] claims are barred in their entirety because Ozzie's was one of its [sic] employees [sic] at the time of the accident."[6] (Amended Pretrial Order at 4, Doc. No. 124.)  While that statement is sloppy and does not explicitly use the term "dual employer," it does give notice that Ozzie's claimed that Ensey was Ozzie's employee when the accident happened.  Thus, the Court finds that based on any reasonable reading of Ozzie's statement of defenses in the Pretrial Order, Ensey should have been aware of the existence of the dual employment issue.

The Tenth Circuit has explained, "[w]hen an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings because the pretrial order is the controlling document for trial. As such, claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint and, conversely, the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim."  *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).  Accordingly, the Tenth Circuit has further instructed that "[s]hould a new claim or defense appear for the first time in the pretrial order, it is incumbent upon opposing counsel to meticulously examine the order, taking exception, if necessary, to the additions, and recording their objection in the pretrial

---

[6] It is obvious that the author meant "his" instead of "its" and "employer" instead of "employee."  Hence, these typographical errors do not so change the meaning of Ozzie's stated defense as to vitiate the notice to Ensey of that intended defense.

order." *Id.* at 1216.   The Court did not receive the parties' final version of the Pretrial

Order until late in the afternoon on the last business day before the start of trial, which

suggests that the parties may not have had time to examine the claims, issues, defenses,

and theories stated in the Pretrial Order with the kind of scrutiny and precision that the

Tenth Circuit requires.

Curiously though, despite claiming that Ensey was not aware of the dual

employment issue before trial, Ensey's counsel, Mr. Houliston, discussed the dual

employment issue during his opening statement, *i.e.* before defense counsel would have

had an opportunity to raise the issue at trial.  (Trial Tr., 42:7-25 - 44:1.)  Specifically,

during his opening statement, Mr. Houliston commented in pertinent part that,

> The other thing that you will see in this case is that, despite what you may
> have heard today from Mr. Yarbrough, from day one, and you can - - you
> see all the boxes that we have here in the courtroom, there are boxes of
> documents, hundreds of documents, thousands. There does not exist one
> document anywhere that says on the day of this accident, October 19th,
> 2005, that John Ensey worked for Ozzie's . In fact, every document in the
> case that's ever been filed says that at the time of this accident John Ensey
> worked for Rockford, and that's an important issue in this case because
> Rockford is claiming - - excuse me, *Ozzie's is claiming that John had two*
> *employers*: He worked for Rockford and he worked for Ozzie's.

(*Id.* at 42:7-18)(emphasis added.)  Ensey offers no explanation, and the Court can

conceive of none, for the apparent contradiction between Mr. Houliston's remarks

during opening statements and Ensey's post-trial claim that he was not aware of the

dual employment issue before trial.

Ensey has failed to articulate any error attributable to the Court for his alleged

unawareness of the dual employment issue, much less plain error that would have called

into question the Court's instructions to the jury.  Thus, a new trial is not warranted

based on Ensey's alleged lack of notice of the dual employment issue.

### b.    Ozzie's Entitlement to a Dual Employment Instruction

Ensey next argues that even if he were aware of the dual employment issue before trial, the Court should not have instructed the jury on that issue because, regardless of Ensey's employment status, Ozzie's purportedly failed to comply with the insurance provisions of the Act and thus was not entitled to invoke the protections of the Act's exclusivity provision.  In support of that argument, Ensey points to the terms of the contract between Ozzie's and Rockford, and notes that Rockford was not required to, and in fact did not, name Ozzie's as a co-insured or additional insured on the workers' compensation insurance policy.  Thus, according to Ensey, "Ozzie's failed to obtain worker's [sic] compensation insurance and cannot claim coverage under the Act by a mere mention in a contract about worker's [sic] compensation coverage."  (*Id.* at 3.)  In other words, Ensey contends that Ozzie's cannot satisfy its insurance obligations under the Act by requiring Rockford to purchase that insurance as a condition of leasing the pipeline padding machine from Ozzie's.

Ozzie's responds by arguing that "[t]he fact that Ozzie's itself may or may not have been an insured under the policy is irrelevant to the inquiry. The question is whether John Ensey was covered, and indeed he was." (Resp. at 6-7.)  Ozzie's asserts that its contract with Rockford required Rockford to provide Ensey with workers' compensation insurance and that Ozzie's provision of an OPP-300 and qualified operator to Rockford was contingent on Rockford procuring that insurance. Accordingly, Ozzie's argues, "workers' compensation coverage for [] Ensey was indeed part of the bargain negotiated between Ozzie's and Rockford."  (*Id.* at 7.)   Furthermore,

Ozzie's maintains that "[t]his type of arrangement is specifically contemplated by the Workers' Compensation Act, NMSA 1978 [§] 52-1-22, where one company contracts with another for the other to perform part of the work of the company." (*Id.*)  Therefore, Ozzie's contends that it "did not need to actually pay for the worker's [sic] compensation coverage. Nor was Ozzie's required to be an insured on the policy, since the policy was intended to benefit Ensey. Instead, by ensuring Ensey was insured, Ozzie's satisfied its obligation to provide coverage under the Act." (*Id.*)

       **i.    Whether Ensey Properly Preserved His Objection to the Court's Ruling on Ozzie's Compliance with the Insurance Requirements of the Act**

Initially, the Court notes the peculiar procedural posture of Ensey's challenge in this regard to the jury instructions.  Although Ensey focuses his arguments on whether Ozzie's complied with the insurance provisions of the Act, that issue was not one on which the jury was instructed.  The issue of Ozzie's compliance with the insurance provisions of the Act is a legal one that the Court properly decided outside the presence of the jury. *See Peterson v. Wells Fargo Armored Servs. Corp.*, 2000-NMCA-043, ¶ 14, 129 N.M. 158, 3 P.3d 135 (noting that it is for the Judge to decide whether a party has substantially complied with the insurance provisions of the Act).  Hence, Ensey's argument that Ozzie's did not comply with the insurance provisions of the Act is more properly viewed as a challenge to the Court's legal ruling at trial rather than as a challenge to the substance of the jury instructions.

This distinction is important because it brings Ensey's challenge to the Court's ruling on Ozzie's compliance with the insurance provisions of the Act within the ambit

of a different provision of the Federal Rules of Civil Procedure.  Specifically, Fed. R. Civ.

P. 46 governs objections to a ruling and provides that:

> A formal exception to a ruling or order is unnecessary. When the ruling or
> order is requested or made, a party need only state the action that it wants
> the court to take or objects to, along with the grounds for the request or
> objection.  Failing to object does not prejudice a party who had no
> opportunity to do so when the ruling or order was made.

Thus, although Rule 46 abolishes the requirement for a formal exception to a ruling, it

does not altogether relieve a party of its obligation to make a record of its request for or

objection to a particular ruling.  Indeed, it is well-settled that Rule 46 does not "permit a

party to sit idly by, watching error being committed, and then take a 'first' shot at the

claimed error without having accorded the trial court the opportunity to correct its

action." *Schultz v. Rice*,  809 F.2d 643, 647 n. 5 (10th Cir. 1986).  While it is true that a

party need not reassert a request or objection after the Court has issued a ruling if the

party has made known "what action the [] party wished taken, or what action actually

taken the [] party opposed," it is axiomatic that the objecting party must have made a

record of his objection at some point. 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE AND PROCEDURE § 2472 (3d ed. 2008).

Under certain circumstances, a party's filing of a pretrial motion stating the

party's objection to particular evidence or requesting a specific ruling on a disputed

issue ahead of trial may be sufficient to create an adequate record for later review either

in a motion for a new trial or on appeal.  *See Green Const. Co. v. Kan. Power & Light

Co.*, 1 F.3d 1005, 1013 (10th Cir. 1993); *see also United States v. Mejia-Alarcon*, 995 F.2d

982, 987-88 (10th Cir. 1993)(examining this issue in the criminal context).  However,

those circumstances appear limited to instances where the objecting party has filed a

motion in limine before trial on which the trial court definitively ruled. *See id.* That did not occur in this case.

Nevertheless, assuming that an objection may be preserved through the filing of a response to a pretrial motion, such as Ensey's Response to Ozzie's Motion for Summary Judgment (Doc. No. 51), the Court must look to three factors to determine whether the party's objection was preserved: 1) whether the issue was adequately presented in the motion and response for the Court's consideration, 2) whether the issue is a type that can be decided before trial, and 3) whether the Court definitively ruled on the issue before trial. *Green Const. Co.*, 1 F.3d at 1013. With regard to the first factor, the parties' cursory treatment, in Ozzie's motion and in Ensey's response, of Ozzie's compliance with the insurance requirements of the Act was hardly sufficient to inform the Court's consideration of the issue. Specifically, Ozzie's made only passing reference to its compliance with the insurance requirements of the Act, claiming that it directed Rockford to procure workers' compensation insurance for Ensey, which Ozzie's ostensibly maintained was sufficient to satisfy its obligations under the Act. (*See* Mot. Summ. J. at 16, Doc. No. 49.) Similarly, and likely as a result of Ozzie's limited discussion of the issue, Ensey devoted only one paragraph to the issue in his Response to Ozzie's Motion for Summary Judgment. Ensey merely recited the insurance requirements of the Act and the insurance arrangement between Ozzie's and Rockford, and then concluded by stating "Ozzie's own arguments beg the question of how the Act would apply to an alleged employer whose contract suggests that it did not procure workers' compensation insurance and did not believe it was required to do so." (Resp. to Mot. Summ. J. at 15, Doc. No. 51.) Strikingly absent from both parties' discussion of

the issue was any meaningful legal analysis; thus, the parties' presentation of the issue

in Ozzie's motion and Ensey's response was wholly insufficient.  Consequently, with

respect to the second and third factors, while Ozzie's compliance with the insurance

requirements of the Act is a legal issue that could have been decided before trial had the

parties adequately addressed the issue in their briefing, the Court elected not to resolve

the issue before trial given the inadequacy of the record and the legal arguments. Hence,

the Court did not issue any pretrial ruling on that issue.  Therefore, because the issue

was not adequately presented to the Court in advance of trial and because the Court did

not issue a definitive pretrial ruling on the issue, Ensey did not preserve his objection to

the Court's later ruling on the issue through filing his Response to Ozzie's Motion for

Summary Judgment.

Accordingly, to preserve his objection to the Court's ruling on Ozzie's compliance

with the insurance requirements of the Act, Ensey was required under Rule 46 to make a

record at trial of his objection to that ruling.  Ensey seemingly maintains that his

counsel's argument during an informal jury instruction conference, at which the court

reporter was not present, was sufficient to preserve Ensey's objection to the Court's

ultimate ruling on Ozzie's compliance with the insurance requirements of the Act.  The

Court does not agree.[7]  Importantly, the record is entirely devoid of any argument or

objection from Ensey's counsel on the issue of Ozzie's compliance with the insurance

---

[7] The Court notes that it only intended to discuss anticipated concerns about the jury instructions in its off the record conference with counsel during the lunch hour. The Court did not intend to entertain formal objections to the proposed instructions at that time, which is why the Court excused the court reporter before beginning that informal conference.

requirements of the Act.  Indeed, the only mention of the issue in the trial record is when the Court first issued and later explained its ruling that Ozzie's complied with the insurance requirements of the Act through its agreement with Rockford.  (Trial Tr. 440:21 - 441:4; 443:17 - 445:3.)  Neither at the time the Court initially announced its ruling nor at the time the Court explained the basis for its ruling did Ensey's counsel object or in any way seek to place on the record the arguments earlier raised informally off the record.  Furthermore, it is always the Court's practice to inquire of counsel on the record, before the jury enters the courtroom, whether there are any issues counsel wish to address with the Court.  (*See, e.g.,* Trial Tr. 418:2-4; 422:16-17; 435:24-25; 441:22.) However, despite numerous opportunities for Ensey's counsel to place his arguments on the record, either earlier in the day or after the Court issued its ruling, he did not do so. Thus, the Court is left with nothing to review but its own ruling, which it will now do, looking only at whether the Court's ruling on Ozzie's compliance with the insurance requirements of the Act was plain error.  *See Employers Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 769-70 (10th Cir. 2004)(citing 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2472 (2d ed. 1995))(noting that despite the absence of a proper objection, courts may nevertheless consider whether a particular ruling constituted "error so fundamental that it may have resulted in a miscarriage of justice.").

> **ii.  Whether the Court's Ruling that Ozzie's Complied with the Insurance Requirements of the Act was Plain Error**

As the Court previously observed at trial, the New Mexico law on this issue is far from clear.  Indeed, the parties have not provided, and the Court has not located, any

New Mexico case law directly on point.  However, the Court finds highly instructive the New Mexico Supreme Court's decision in *Harger v. Structural Svcs., Inc.*, 1996-NMSC-018, 121 N.M. 657, 916 P.2d 1324*,* and the New Mexico Court of Appeals' decision in *Vigil v. Digital Equip. Corp.*, 1996-NMCA-100, 122 N.M. 417, 925 P.2d 883.

      In *Harger*, the New Mexico Supreme Court considered whether a general contractor could satisfy the insurance requirements of the Act, and thus be entitled to the protections of the exclusivity provision if it met the other requirements, by contractually assuring that its subcontractor procured workers' compensation insurance for the subcontractor's employees.  Answering that question in the affirmative, the New Mexico Supreme Court stated that "[w]e agree with the [New Mexico] Court of Appeals that an employer may satisfy its obligation to comply with the insurance provisions by providing insurance through a third party."  *Harger*, 1996-NMSC-018, 121 N.M. 657, 666, 916 P.2d 1324, 1333 (citing *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. 676, 681, 884 P.2d 832, 837 (Ct. App. 1994)). While the *Harger* court made clear that "general contractors are not entitled to immunity whenever or because they 'contractually assure' insurance coverage to employees of their subcontractors[,]" it further explained that the determination of the availability of immunity in that context depended on the interpretation and application of a provision of the Act not applicable in this case. Hence, in applying *Harger* to this case, the Court believed that the New Mexico courts recognize the possibility of an employer satisfying its insurance requirements through contracting with a third party, and proceeded to look for further guidance in the later jurisprudence on that issue.

The Court found that guidance in the New Mexico Court of Appeals' decision in
*Vigil*.  There, the New Mexico Court of Appeals considered the related issue of whether
a temporary employer could satisfy its insurance obligations by contractually ensuring
that the general employer, in that case a staffing agency, procured workers'
compensation insurance for the temporary employee.  Like the New Mexico Supreme
Court in *Harger*, the New Mexico Court of Appeals answered that question in the
affirmative.  The plaintiff in *Vigil*, like Ensey here, argued that the temporary employer
had "relinquished the right to invoke the exclusivity provision of the Act when it
disclaimed any liability as an employer and required [the general employer] to carry
workers' compensation insurance."  *Vigil*, 1996-NMCA-100, ¶ 10.  The New Mexico
Court of Appeals rejected that argument, pointing first to its earlier decision in *Rivera v.
Sagebrush Sales, Inc.*, 118 N.M. 676, 884 P.2d 832 (Ct. App. 1994) in which it held that
"specific provisions in the contract between a temporary agency and an employer of
workers assigned through the agency meant that the employer had paid workers'
compensation for assigned employees as part of the contract fee."  *Vigil*, 1996-NMCA-
100, ¶ 9 (citing *Rivera*, 118 N.M. at 678-80, 884 P.2d at 834-36).  The *Vigil* court then
observed that "[t]he fee scheme between temporary labor agencies and contracting
employers permits items such as workers' compensation insurance to be procured
through the agency, with the costs passed on to the contracting employer in the full
price paid for the workers' wages on any given day. If the contract employer arranged
compliance with the Act relating to the insurance of its workers and ultimately paid for
the insurance, the fact that the parties' agreement did not spell out their obligations
regarding actual procurement of the insurance is immaterial."  *Vigil*, 1996-NMCA-100,

21

¶ 14.  Finally, the court noted the New Mexico Supreme Court's holding in *Harger* that reaffirmed the principle earlier articulated by the New Mexico Court of Appeals in *Rivera* that "an employer may satisfy its obligations under the Act by providing workers' compensation insurance through a third party."  *Vigil*, 1996-NMCA-100, ¶ 24.

While both *Harger* and *Vigil* are, to an extent, factually distinguishable from the circumstances in this case, the Court nevertheless believed that the legal principles announced in *Harger* and *Vigil* were applicable to the circumstances in this case. Specifically, both cases reflect an inherent acknowledgment of the purpose underlying the workers' compensation statutory scheme: to "ensure[] that injured workers are adequately compensated and that employers may avoid excessive tort liability."  *Vigil*, 1999-NMCA-100, ¶ 7.  Likewise, both *Harger* and *Vigil* stand for the proposition that it is unnecessary for entities engaged in a joint or interrelated venture to obtain duplicative workers' compensation insurance when, *inter alia*, the parties contractually assure that one party will obtain and provide that insurance.  Thus, where such a contractual arrangement exists and the other requisite factors are satisfied, *Harger* and *Vigil* afford both contracting entities the protections of the exclusivity provision as if both had procured the insurance required under the Act.

In this case, three important facts are undisputed that firmly supported the Court's finding that Ozzie's complied with the insurance requirements of the Act through its arrangement with Rockford.  First, it is undisputed that the terms of the contract governing Ozzie's lease of the pipeline padding machine to Rockford required, *inter alia*, that Rockford procure workers' compensation insurance for the operator provided by Ozzie's to run the machine.  (*See* Agreement between Ozzie's and Rockford,

22

§ 2.11, Def.'s Trial Ex. A.)  Second, it is undisputed that Rockford procured the workers'
compensation insurance required under the terms of that contract.  (*See generally*
Def.'s Trial Ex. A; Mot. at 7.)  Third, it is undisputed that the workers' compensation
insurance policy procured by Rockford as a result of its agreement with Ozzie's paid all
of Ensey's workers' compensation benefits stemming from his accident.  (*See* Def.'s Trial
Ex. X-2.)   Hence, it is clear that Ozzie's negotiated for and contractually assured the
procurement of a workers' compensation insurance policy for Ensey and that Ensey was
fully compensated under that policy for the expenses related to his injuries.  The Court
thus found the negotiated arrangement between Ozzie's and Rockford sufficiently
analogous to the negotiated arrangements in *Harger* and *Vigil* to apply the holdings of
those cases to this case.

     In reviewing those findings now, the Court concludes it did not commit plain
error.  The issue of Ozzie's compliance with the insurance requirements of the Act
presented a difficult and unsettled legal question, and the Court issued a legal ruling
based on the current state of the law in New Mexico and the undisputed facts in the
record. While Ensey may urge a different interpretation of the Act or the related
jurisprudence, he has failed to offer any authority suggesting that the Court's legal
analysis was patently or plainly erroneous and the Court has found none.  Therefore,
because there was no plain error, Ensey's Motion in this regard should be denied.

**C.   Ensey's Motion for a New Trial Based on Insufficiency of the Evidence**

     As discussed earlier, in response to correspondence from the Court, Ensey's
counsel indicated that Ensey intended to challenge the sufficiency of the evidence
supporting the jury's verdict that Ozzie's was Ensey's employer.  However, despite

expressing his intent to do so, Ensey never clearly articulated the basis for his challenge. Although it appeared at times that Ensey intended to challenge the evidentiary basis for the jury's finding of dual employment (*see, e.g.,* Mot. at 2; Supp. Mot. at 3), those apparent challenges amounted to nothing more than passing references which Ensey did not support through specific citations to the record.  Instead, and somewhat curiously, Ensey focused the vast majority of his arguments on the evidence related to Ozzie's compliance with the insurance requirements of the Act.  As the Court previously noted in Part I.B.2.b.i *supra*, the issue of Ozzie's compliance with the insurance requirements of the Act was a legal one that the jury was not charged with considering. While the Court attempted to clarify the nature of Ensey's evidentiary challenge through its several letters to counsel, the Court's request for clarification went largely unanswered.  Thus, the Court is left with the unenviable task of deciphering the exact basis or bases for Ensey's purported sufficiency of the evidence challenge.  To the extent Ensey seeks to challenge the sufficiency of the evidence supporting an issue on which the jury did not render a verdict, the Court declines to address such a challenge and finds that Ensey's concerns in that regard are fully addressed in Part I.B.2.b *supra.* Therefore, the Court will only consider Ensey's apparent challenge to the sufficiency of the evidence supporting the jury's finding that Ensey was an employee both of Ozzie's and Rockford at the time of his accident.

When "a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence."  *M.D. Mark, Inc. v. Kerr-McGee, Corp.*, 565 F.3d 753, 762 (10th Cir. 2009) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th

Cir. 1999)).  "The court considers the evidence in the light most favorable to the

prevailing party, bearing in mind that the jury has the exclusive function of appraising

credibility, determining the weight to be given to the testimony, drawing inferences

from the facts established, resolving conflicts in the evidence, and reaching ultimate

conclusions of fact."  *Snyder v. City of Moab*, 354 F.3d 1179, 1188 (10th Cir. 2003)

(internal citations, quotation marks, and alterations omitted).

       In this case, far from demonstrating that the jury's verdict was overwhelmingly

against the weight of the evidence, Ensey has offered no more than conclusory

assertions that the jury's verdict was not supported by sufficient evidence.  Although

Ensey would presumably like the Court to examine the record and weigh the evidence

against that which Ozzie's has presented in its briefing, the Court will not do so.  It is

well-settled that "the district courts [] have a limited and neutral role in the adversarial

process, and are wary of becoming advocates who comb the record of previously

available evidence and make a party's case for it."  *Adler v. Wal-Mart Stores, Inc.*, 144

F.3d 664, 672 (10th Cir. 1998).  The trial in this case lasted nearly one week and

consequently generated a rather substantial trial record.  The Court declines to comb

through the 7 video depositions offered at trial and the 545 pages of the trial transcript

to make Ensey's argument for him.  Likewise, the Court will not disturb the jury's

verdict based on little more than Ensey's disagreement with the result the jury reached.

Therefore, the Court finds that Ensey should not be granted a new trial based on an

alleged insufficiency of evidence supporting the jury's verdict.

## II.      Motion for Judgment as a Matter of Law

At the end of his Motion, Ensey asserts that "[b]ecause Ozzie's cannot prove its defense of preemption under the Act, judgment on that issue is appropriate as a matter of law pursuant to Fed. R. Civ. P. 50(a)." (Mot. at 10.)  This argument is puzzling in two respects.  First, Ozzie's has never asserted a "defense of preemption" (*see generally* Ans., Doc. No. 7; Mot. Summ. J., Doc. No. 49; Amended Pretrial Order, Doc. No. 124 at 4) nor does Ensey address that supposed defense at any point in his Motion or in his previous filings (*see generally* Mot., Doc. No. 139; Resp. to Mot. Summ. J., Doc. No. 51).  Second, and more importantly, Ensey seeks a remedy that is not available to him at this point in the litigation.  Under Fed. R. Civ. P. 50 (a)(2), "[a] motion for judgment as a matter of law may be made at any time *before* the case is submitted to the jury.  The motion must specify the judgment sought and the law and facts that entitled the movant to the judgment." (emphasis added).  Ensey never raised such a motion before the Court submitted the case to the jury, and thus his current motion under Rule 50 (a) is untimely brought.  Furthermore, because he failed to raise a motion under Rule 50 (a) at trial, he is now precluded from raising an equivalent post-trial motion under Rule 50 (b).  Indeed, it is well-settled that "issues not raised in an initial Rule 50(a) motion may not be asserted in a subsequent post-trial motion for judgment as a matter of law under Rule 50(b)."  *Okland Oil Co. v. Knight,*  92 Fed. Appx. 589, 598 (10th Cir. 2003)(citing Fed. R. Civ. P. 50; *Hinds v. General Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir. 1993)).  Therefore, because Ensey's motion for judgment as a matter of law is not properly presented, it should be denied.

26

## CONCLUSION

The Court did not commit plain error by instructing the jury on the issue of dual employment or by finding that Ozzie's satisfied the insurance requirements of the Act through its negotiated arrangement with Rockford.  Additionally, Ensey did not properly present a motion for judgment as a matter of law under Fed. R. Civ. P. 50 (a) at trial and is therefore precluded from seeking such relief now.

**IT IS THEREFORE ORDERED THAT:**

1)      Ensey's Motion for New Trial and Memorandum in Support (Doc. No. 139) is DENIED; and

2)      Ensey's Supplemental Motion for New Trial and Memorandum in Support (Doc. No. 152) is DENIED.


_____
**SENIOR UNITED STATES DISTRICT JUDGE**